UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:16-cv-23047-COOKE/TORRES**

ARNALDO RAVELO,

    Plaintiff,

v.

RANDALL AKINS, Field Office Director,
U.S. Citizenship and Immigration Services,
Kendall Field Office,
JEH JOHNSON, Secretary,
U.S. Department of Homeland Security,

    Defendants.
_____/

## **ORDER GRANTING MOTION TO DISMISS**

Plaintiff challenges the U.S. Citizenship and Immigration Services' ("USCIS") denial of his I-485 Application for Adjustment of Status for inadmissibility to the United States. I have jurisdiction under 5 U.S.C. § 701 *et seq.* and 28 U.S.C. § 1331.

Pending is Defendants' Motion to Dismiss Plaintiff's Complaint. (ECF No. 9). I grant the motion.

### BACKGROUND

Plaintiff Arnaldo Ravelo, a citizen of Cuba, first entered the United States as an indefinite parolee on November 25, 1992. (ECF No. 1 ¶ 12). That initial parole expired on November 24, 1993. (ECF No. 1, Ex. A, at 7). Plaintiff nevertheless remained in the United States, and on April 1, 1997, he began to accrue unlawful presence.[1] (ECF No. 1, Ex. A at 4).

---

[1] The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") became effective as of April 1997. *See In re Rodarte-Roman,* 23 I&N Dec. 905, 911 (BIA 2006) (no period before the statute's effective date shall be included in a period of unlawful presence in the United States).

1

On April 24, 2012, having accrued more than a year of unlawful presence, Plaintiff crossed the United States border to Canada to make a delivery as a truck driver. (*Id.* ¶ 16). Upon his return that same day, Plaintiff reentered the United States under a section 1882(d)(5) parole. (*Id.*).

In 2013, Plaintiff filed his second Application for Adjustment of Status.[2] (*Id.* ¶¶ 17-23). USCIS denied the application because Plaintiff's unlawful presence in the United States of more than one year and his 2012 departure from the United States triggered a 10-year inadmissibility ban under section 1182(a)(9)(B)(i)(II).[3] (ECF No. 9 at 2, 3).

Plaintiff filed his Complaint on July 14, 2016, challenging the USCIS's denial of his application and the agency's legal determination that he is inadmissible. (ECF No. 1 ¶ 1). USCIS moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) on September 29, 2016. (ECF No. 9).

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1223 (11th Cir. 2014). The court must accept such allegations as true and construe them in the light most favorable to the non-moving party. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

Where, as here, a plaintiff challenges a United States agency's action under the Administrative Procedures Act, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or found to be] without observance of procedure required by law." 5 U.S.C. § 706(2). The standard of review is exceedingly deferential. *Sierra Club v. Flowers*, 526 F.3d 1353, 1360 (11th Cir. 2008). The court's role is to

---

[2] Plaintiff filed his first Application for Adjustment of Status, which the USCIC denied, on February 26, 2002. (ECF No. 1 ¶¶ 13-15).

[3] Section 1182(a)(9)(B)(i)(II) states that "[a]ny alien (other than an alien lawfully admitted for permanent residence) who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible."

ensure that the agency came to a rational conclusion, "not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996).

## DISCUSSION

Defendants argue that Plaintiff's trip to Canada constituted a "departure" under section 1182(a)(9)(B)(i)(II), which in turn triggered the 10-year inadmissibility clause under the same section. I agree.

Under the statute, the admissibility of a person seeking reentry to the United States does not depend on the nature or purpose of his or her initial departure from the country. *See Ortiz-Bouchet v. United States AG*, 714 F.3d 1353, 1357 (11th Cir. 2013) (the provisions of section 1182(a)(9)(B)(ii) determine petitioner's admissibility). The statute makes clear that *any* alien who has been unlawfully present in the United States for one year or more, and who again seeks admission within ten years of the date of his or her departure or removal from the United States, is inadmissible. 8 U.S.C. § 1182(a)(9)(B)(i)(II). An alien is unlawfully present in the United States if he or she is present after the expiration of the authorized period of stay or is present in the United States without admission or parole. 8 U.S.C. § 1182(a)(9)(B)(ii).

Here, Plaintiff's initial parole expired on November 24, 1993, and he accrued unlawful presence from April 1, 1997 through February 26, 2002. When he left for Canada in 2012, he had accrued more than a year of unlawful presence. He later sought admission to the United States for permanent residence in 2013, which was within ten years from his departure to Canada in 2012, rendering him inadmissible under section 1182(a)(9)(B)(ii).

Plaintiff relies on *Rosenberg v. Fleuti*, 374 U.S. 449 (1963) which established a "brief, casual, and innocent" exception for making an "entry" into the United States.[4] But the IIRIRA abrogated the *Fleuti* doctrine, replacing, *inter alia*, the concept of "entry" in deportation and exclusion proceedings with "lawful admission" in removal proceedings. *See In re Collado-Munoz*, 21 I. & N. Dec. 1061, 1066 (BIA 1998) ("Thus, we find that the *Fleuti* doctrine, with its origins in the no longer existent definition of entry in the [1952] Act, does

---

[4] The term "entry" appeared in section 101(a)(13) of the Immigration and Nationality Act of 1952, 66 Stat. 167.

not survive the enactment of the IIRIRA as a judicial doctrine."). In addition, the *Fleuti* exception applied only to lawful permanent residents, which the Plaintiff is not. *See Fleuti*, 374 U.S. at 462; *see also Assa'ad v. United States AG*, 332 F.3d 1321, 1332 (11th Cir. 2003) ("Congress provided a limited exception, applicable only to lawful permanent residents.").

Plaintiff also cites *Matter of Arrabally and Yerrabelly*, 25 I. & N. Dec. 771 (BIA 2012), to argue that his indefinite parole, coupled with his Cuban nationality, exempts him from the ten-year bar set forth in section 1182(a)(9)(B)(ii). In *Arrabally*, the Board of Immigration Appeals ("BIA") determined that an Indian married couple who had received advance parole from USCIS had not "departed" the United States. *Id.* at 780. The husband held an employment-based visa and he and his wife applied for adjustment of status. *Id.* While the applications were pending, the couple received advanced parole from USCIS to allow them to go to India to care for their ailing parents and thereafter return to the United States. *Id.* The BIA overturned a USCIS determination that these departures rendered petitioners inadmissible because a grant of advance parole "is qualitatively different from other departures, because it presupposes both that he will be permitted to return to the United States thereafter and that he will, upon return, continue to pursue the adjustment of status application he filed before departing." *Id.* at 778.

Plaintiff's reliance on *Arrabally* is misplaced. Unlike the couple in *Arrabally*, Plaintiff did not depart the United States at a time when he had a pending adjustment application. His departure came after accruing several years of unlawful presence and before he filed his next application. Also, unlike the *Arrabally* couple, Plaintiff did not seek, nor did he receive, advance parole prior to his departure from the United States. The *Arrabaly* court made clear that an alien who voluntarily departs the country without seeking advance permission after accruing more than a year of unlawful presence is subject to a ten-year admission bar:

> We continue to espouse the view that an alien . . . who accrued more than 1 year of unlawful presence in the United States and then departed of his own volition without having obtained advance permission to return – fell within the class of individuals that Congress intended to cover when it enacted [section 1182(a)(9)(B)(i)(II)].

*Id.* at 775.

Plaintiff insists that his Cuban nationality tips the scale in his favor, conferring unique immigration benefits equivalent to the grant of advance parole. But the Congress has not granted unfettered rights to alien Cuban nationals to enter and leave the United States. The Eleventh Circuit made that fact clear in *Cuban American Bar Association, Inc. v. Christopher*, 43 F.3d 1412, 1426 (11th Cir. 1995), stating:

> The individual Cuban plaintiffs attempt to utilize the Cuban Refugee Adjustment Act, 8 U.S.C. § 1255, and the Cuban Democracy Act, 22 U.S.C. §§ 6001–6010, to assert the right of the Cuban migrants to seek parole and asylum in the United States. While these acts acknowledge the political climate in Cuba, provide for economic sanctions for dealing with Cuba, and allow for certain rights for Cubans who reach the United States, they do not address the rights of Cuban migrants to enter or to seek entry to the United States initially, nor do they confer directly any rights upon the Cuban migrants outside the United States. Hence, neither of these acts can be relied upon by the individual Cuban plaintiffs to assert a right against repatriation or to seek parole or asylum in the United States from safe haven.

*See also Movimiento Democracia, Inc. v. Johnson*, 2016 WL 3522179, at *10 (S.D. Fla. 2016) ("Congress has not defined what constitutes the parameters of the Wet-Foot/Dry-Foot Policy. Rather, the Executive Branch has made that determination.").

Because the statutory language does not create an exemption for Cuban nationals to the inadmissibility bar of section 1182(a)(9)(B)(i)(II), the USCIS's determination that Plaintiff was inadmissible was not arbitrary, capricious, or contrary to the law. I therefore affirm.

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED** and Plaintiff's Complaint (ECF No. 1) be **DISMISSED** *with prejudice*. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida, this 30th day of November 2016.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*